UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KRISTINA G. o/b/o M.E.G.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

**DECISION AND ORDER**

1:23-CV-00904 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Kristina G. ("Plaintiff") brings this action on behalf of M.E.G., a minor child, pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for children's supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings. (Dkt. 13; Dkt. 14). For the reasons discussed below, the Commissioner's motion (Dkt. 14) is granted, and Plaintiff's motion (Dkt. 13) is denied.

## BACKGROUND

On July 2, 2020, Plaintiff protectively filed an application for SSI on behalf of M.E.G., a child under the age of 18. (Dkt. 9 at 14, 94).[1] Plaintiff alleged M.E.G.'s

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

disability began on July 2, 2020. (*Id.* at 14, 92). Plaintiff's application was initially denied on December 17, 2020, and on reconsideration on August 18, 2021. (*Id.* at 14, 130-42). On June 21, 2022, Plaintiff and M.E.G. appeared at a hearing before administrative law judge ("ALJ") Paul Georger. (*Id.* at 50-80). On September 23, 2022, the ALJ issued an unfavorable decision. (*Id.* at 11-34). Plaintiff requested Appeals Council review, and her request was denied on July 3, 2023, making the ALJ's decision the Commissioner's final determination. (*Id*. at 5-10). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he

deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     **Disability Determination**

To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). An ALJ follows a three-step sequential evaluation to determine whether a child is entitled to SSI benefits. *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 75 (2d Cir. 2009). "First, the child must not be engaged in 'substantial gainful activity.' Second, the child 'must have a medically determinable impairment(s)' that is 'severe' in that it causes 'more than minimal functional limitations.' Third, the child's impairment or combination of impairments must medically or functionally equal an impairment listed in an appendix to the regulations." *Id*. (quoting 20 C.F.R. § 416.924).

The limitations caused by a child's severe impairment are evaluated pursuant to six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). "For a child's impairment to functionally equal a listed impairment, the impairment must 'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.'" *Encarnacion*, 568 F.3d at 75 (quoting 20 C.F.R.

§ 416.926a(a)). "A marked limitation is more than moderate but less than extreme and interferes seriously with a child's ability to independently initiate, sustain, or complete activities. An extreme limitation is more than marked and interferes very seriously with a child's ability to independently initiate, sustain, or complete activities." *Id*. (internal quotations and citations omitted).

## DISCUSSION

### I. The ALJ's Decision

In determining whether M.E.G. was disabled, the ALJ applied the three-step sequential evaluation set forth in 20 C.F.R. § 416.924. Initially, the ALJ determined that M.E.G. was an adolescent on July 2, 2020, the date the application was filed, and on the date of the written determination. (Dkt. 9 at 17). At step one, the ALJ determined that M.E.G. had not engaged in substantial gainful activity since July 2, 2020, the application date. (*Id*.).

At step two, the ALJ found that M.E.G. suffered from the severe impairments of scoliosis, asthma, anxiety, and major depressive disorder. (*Id*.). The ALJ further found that M.E.G.'s attention deficit hyperactivity disorder and innocent heart murmur/perceived tachycardia were non-severe impairments. (*Id*. at 17-18).

At step three, the ALJ found that M.E.G. did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 18). Similarly, the ALJ found that M.E.G. did not have an impairment or combination of impairments that functionally equaled the severity of the Listings. (*Id*.). In making this determination, the ALJ considered M.E.G.'s functioning in each of the above-mentioned

six domains and concluded that M.E.G. had a marked limitation in acquiring and using information, and a less than marked limitation in attending and completing tasks, interacting and relating with others, caring for herself, moving about and manipulating objects, and health and physical well-being. (*Id*. at 18-29). Accordingly, the ALJ found that M.E.G. was not disabled as defined in the Act. (*Id*. at 29).

II.  **The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error**

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that the ALJ failed to properly consider a questionnaire completed by teacher Michelle Mole and "cherry-picked evidence to ignore M.E.G's significant issues with maintaining focus and completing tasks." (Dkt. 13-1 at 1). The Court is unpersuaded by these arguments.

"When assessing a child's ability in each of the six domains, an ALJ considers evidence from all settings, including school records such as grades and aptitude and achievement test scores, evidence from medical and non-medical sources, and evidence from the child himself, in order to take into account the whole child." *Martonique A. o/b/o M.Q. v. Comm'r of Soc. Sec.*, No. 1:21-CV-849-DB, 2023 WL 5723068, at *5 (W.D.N.Y. Sept. 5, 2023) (quotation omitted). The ALJ followed this approach here, including in assessing M.E.G.'s ability in attending and completing tasks. The ALJ considered Ms. Mole's teacher questionnaire, noting that she had opined—among other things—that M.E.G. "zones out" in class and is unable to answer questions when called upon. (Dkt. 9 at 25; *see id*. at 259). The ALJ weighed that report against medical evidence demonstrating that "apart from inattention, [M.E.G.] is cognitively intact with full orientation and no

evidence of disordered thought processes." (*Id*. at 25). The ALJ also considered the opinion of state agency reviewing pediatrician Dr. B. Stouter, who opined that M.E.G. had a less than marked limitation in attending and completing tasks. (*Id*. at 23; *see id*. at 88). Importantly, Dr. Stouter consider Ms. Mole's teacher questionnaire in reaching this conclusion. (*Id*. at 88). It is clear that the ALJ took Ms. Mole's teacher questionnaire into account when reaching his conclusions.

      Plaintiff argues that the ALJ committed legal error because he did not evaluate Ms. Mole's teacher questionnaire "in light of the 20 C.F.R. § 404.1527(c) factors." (Dkt. 13-1 at 18). Plaintiff is incorrect. The regulation she cites applies only to claims filed before March 27, 2017, while M.E.G.'s claim was filed in July 2020. The relevant regulation for M.E.G.'s claim is 20 C.F.R. § 416.920c, which states explicitly that an ALJ is not "required to articulate how [he or she] considered evidence from nonmedical sources using the requirements" applicable to medical opinions. *Id*. § 416.920c(d). "[T]eachers are not medical sources and thus do not issue medical opinions[.]" *Nicole A. o.b.o L.S. v. Comm'r of Soc. Sec.*, No. 1:22-CV-00343 (JGW), 2024 WL 3228001, at *4 (W.D.N.Y. June 28, 2024). The ALJ did not err in not assessing Ms. Mole's teacher questionnaire using the factors applicable to medical opinions.

      Plaintiff also has not demonstrated that the ALJ's determination was actually inconsistent with Ms. Mole's teacher questionnaire. With respect to the domain of attending and completing tasks, Ms. Mole opined that M.E.G. had a very serious problem completing work without careless mistakes, a serious problem focusing long enough to finish assigned tasks and activities and completing class and homework assignments, an

obvious problem paying attention when spoken to directly and working at a reasonable pace/finishing on time, a slight problem carrying out multi-step instructions, and no problem refocusing to task when necessary, carrying out single-step instructions, waiting to take turns, changing from one activity to another without being disruptive, organizing her own things and school materials, and working without distracting herself and others. (Dkt. 9 at 259). "[A]ssessments of 'serious' and 'very serious' problems in a domain are not necessarily inconsistent with an ALJ's conclusion that the child's limitations were 'less than marked.'" *Sally M. o/b/o C.B. v. Comm'r of Soc. Sec.,* No. 20-CV-6210-MJR, 2021 WL 1783007, at *3 (W.D.N.Y. May 5, 2021). In this case, Ms. Mole identified only one very serious problem and two serious problems, while finding no or slight problems in seven of the identified activities. Plaintiff has offered no persuasive argument as to why the ALJ was required to conclude that this opinion supported a finding of a marked limitation in attending and completing tasks.

  Nor has Plaintiff demonstrated that the ALJ engaged in improper cherry-picking of the evidence with respect to M.E.G.'s ability in attending and completing tasks. Plaintiff identifies several pieces of evidence that she claims the ALJ failed to adequately consider in making his determination. As an initial matter, Plaintiff is incorrect in several of her assertions about the ALJ's consideration of the evidence. For example, Plaintiff claims that the ALJ "did not discuss [M.E.G.'s] 504 Plan." (Dkt. 13-1 at 24). But the ALJ explicitly noted in his decision that M.E.G. "was granted reasonable accommodations under Section 504 due to her being unfocused during classroom instruction and struggling to pay attention," and explained what the accommodations were. (Dkt. 9 at 22). In his

assessment of the attending and completing tasks domain, the ALJ acknowledged again that M.E.G. struggles with inattention. (*Id*. at 25).

In any event, "[a]n ALJ need not recite every piece of evidence that contributed to the decision," *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013), nor is he required to "reconcile every shred of medical evidence in order to support his opinion with substantial evidence," *Kevin F. v. Comm'r of Soc. Sec.*, No. 5:18-CV-1454 (ATB), 2020 WL 247323, at *9 (N.D.N.Y. Jan. 16, 2020). The ALJ's conclusion that M.E.G. had a less than marked limitation in attending and completing tasks is amply supported by the evidence of record. This evidence includes Dr. Stouter's opinion, psychiatric testing in May 2019 showing "mild inattention, that causes occasional interference with [M.E.G.'s] functioning" (Dkt. 9 at 417), and a consultative examination in December 2020 showing only mild impairment in attention and concentration, intact and age appropriate recent and remote memory, and average intellectual functioning (*id*. at 545).

Plaintiff is correct that there is evidence in the record from which the ALJ could have reached a different conclusion. But it is not the function of this Court to re-weigh evidence or consider *de novo* whether M.E.G. is disabled. *See Urena v. Comm'r of Soc. Sec.*, 379 F. Supp. 3d 271, 278 (S.D.N.Y. 2019) ("Importantly, it is not a reviewing court's function to determine *de novo* whether [a claimant] is disabled." (alteration in original) (internal quotation and citation omitted)). Rather, "[a]bsent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance." *Russell v. Saul*, 448 F. Supp. 3d 170, 175 (D. Conn. 2020); *see also Genier v. Astrue*, 606

F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence.").

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 14) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 13) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  August 2, 2024
        Rochester, New York